USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1-13-2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ELIHU ROMERO, SAMUEL LEON, NELSON
ELIAS DIAZ, FRANCISCO TENEZACA,
FRANCISCO AGUILAR, FERNANDO OLEA,
JHON SPENCER, REYNALDO ARIZA
BARRIOS, SERGIO AVILA LOPEZ,
FERNANDO ARELLANO, and GREBIL
MORENO, individually and on behalf of others
similarly situated,

                                        Plaintiffs,

                        -against-

REAL INNOVATIVE CONSTRUCTION, LLC,
ECI CONTRACTING, LLC, and ANDY
MORALES, CARLOS MORALES, and
KIERAN KEAVENEY, as individuals,

                                        Defendants.
--------------------------------------------------------------X

18 Civ. 7424 (VEC) (RWL)

**REPORT AND RECOMMENDATION
TO HON. VALERIE E. CAPRONI:
MOTION TO DISMISS**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiffs bring this putative collective action asserting claims for unpaid wages, unpaid overtime compensation, and failure to receive wage notices pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants ECI Contracting, LLC and Kieran Keaveney ("Moving Defendants") now move to dismiss, alleging that Plaintiffs fail to adequately plead that the Moving Defendants served as Plaintiffs' employers under the relevant statutes. For the reasons stated below, the Moving Defendants' motion to dismiss should be DENIED.

## Factual Background[1]

Plaintiffs worked as rebar workers, construction workers, and laborers at a construction site located at 164 West 74th Street, New York, New York 10023 from April 2018 through June 2018. (Complaint ¶¶ 2-12.) Defendants Andy Morales and Carlos Morales own and operate Defendant Real Innovative Construction, LLC (collectively, the "RIC Defendants"). (Complaint ¶¶ 31, 44.) Defendant Kieran Keaveney owns and operates Defendant ECI Contracting, LLC. (Complaint ¶ 59.)

For the months Plaintiffs worked on the job site, Defendants Andy and Carlos Morales were present on a daily basis, informing Plaintiffs when to arrive at the site and begin working, instructing them on what tasks to complete and how to complete them, and otherwise supervising them. (Complaint ¶¶ 34-35, 47-48.) Defendants Andy and Carlos Morales hired Plaintiffs and had control over personnel decisions at Real Innovative Construction, LLC throughout the relevant period. (Complaint ¶¶ 37-39, 50-52.) They also had power over payroll decisions and were involved in distributing Plaintiffs' paychecks. (Complaint ¶¶ 40-41, 53-54.)

Defendant Keaveney was at the job site approximately three times per week "to check on the status of the project." (Complaint ¶ 61.) While on the job site, Defendant Keaveney told Plaintiffs what needed to be done or corrected, instructed Plaintiffs on what tools to use to complete these tasks, and informed Plaintiffs that he would provide those

---

[1] The facts are based on the First Amended Complaint filed on May 16, 2019 (Dkt. 44) (the "Complaint"). In accordance with the standard for reviewing a motion to dismiss, all non-conclusory facts are derived from the Complaint and accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor, as the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013).

tools if necessary.   (Complaint ¶ 63.)   Defendant Keaveney was responsible for determining when Plaintiffs would stop working each day and, at times, instructed Mark McCarthy, a foreman for ECI Contracting, LLC, to have Plaintiffs stay late.  (Complaint ¶¶ 66-67.)   Defendant Keaveney had control over personnel decisions at ECI Contracting, LLC during the relevant period and instructed Defendants Andy and Carlos Morales to terminate certain workers.  (Complaint ¶¶ 65, 68.)  Although hired by Defendants Andy and Carlos Morales, Plaintiffs were told and understood that termination decisions were made by Defendant Keaveney.  (Complaint ¶¶ 37-39, 50-52, 69.)  Defendant Keaveney also had power over payroll decisions at ECI Contracting, LLC, and would deliver Plaintiffs' paychecks to Defendants Andy and Carlos Morales for distribution.  (Complaint ¶¶ 71-72.)

Plaintiffs were compensated at different hourly rates:  Plaintiff Elihu Romero was paid $60.00 per hour; Plaintiff Sergio Avila Lopez was paid $40.00 per hour; Plaintiff Francisco Aguilar was paid $32.00 per hour; and Plaintiffs Samuel Leon, Nelson Elias Diaz, Francisco Tenezaca, Fernando Olea, Jhon Spencer, Reynaldo Ariza Barrios, Fernando Arellano, and Grebil Moreno were paid $25.00 per hour.  (Complaint ¶¶ 85-152.)  All Plaintiffs, however, worked approximately sixty-three (63) hours per week. (Complaint ¶¶ 87, 94, 100, 106, 112, 118, 124, 131, 137, 143, 149.)  Defendants did not pay any Plaintiffs time and a half of their regular hourly wages for the 23 hours that exceeded the standard 40-hour work week and also withheld normal compensation from some Plaintiffs for certain hours worked.  (Complaint ¶¶ 85-155.)

**Procedural Background**

Plaintiffs filed this action on August 16, 2018.  (Dkt. 1.)  The initial complaint included the RCI Defendants, individual Mark McCarthy and his company RSK Construction, Inc., but did not include either of the Moving Defendants.  (*Id.*)  On November 5, 2018, Defendants Andy Morales, Carlos Morales, and Real Innovative Construction, LLC filed a motion to dismiss the original complaint. (Dkt. 20.) On April 26, 2019, the Honorable Valerie E. Caproni, U.S.D.J. issued an order dismissing Defendant McCarthy and ordering Plaintiffs to file an amended complaint, if any, by May 17, 2019. (Dkt. 38.) On May 2, 2019, Plaintiffs filed a notice of voluntary dismissal without prejudice against Defendant RSK Construction, Inc., leaving only the RCI Defendants.  (Dkt. 41.)

On May 16, 2019, Plaintiffs timely filed their Amended Complaint ("Complaint"), which remains the operative pleading.  (Dkt. 44.)  The Complaint added Defendants ECI Contracting, LLC and Kieran Keaveney, but asserts the same causes of action under the FLSA and NYLL for unpaid overtime, unpaid wages, and failure to provide adequate wage statements as the original pleading.  (*Id.*)  The following day, in light of the amended filing, Judge Caproni denied the motion to dismiss filed on November 5, 2018 as moot, and ordered all Defendants to respond on or before June 14, 2019.  (Dkt. 45.)

On June 14, 2019, Defendants Andy Morales, Carlos Morales, and Real Innovative Construction, LLC answered the Complaint.  (Dkt. 48.)  Approximately one month later, on July 12, 2019, Defendants Keaveney and ECI Contracting, LLC filed the instant motion to dismiss, arguing that the Complaint fails to allege facts sufficient to show that either served as Plaintiffs' "employer" as defined by the FLSA and NYLL.  (Dkt. 52.)  Plaintiffs oppose.  (Dkt. 60.)  The motion was fully briefed as of September 6, 2019.  Judge Caproni

subsequently referred this matter to the undersigned for general pretrial management and for a report a recommendation on the instant motion.  (Dkt. 64.)

## Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a cause of action, a district court "accepts all factual claims in the complaint as true and draws all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotations omitted).  This tenet, however, is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level . . . *i.e.*, enough to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotations omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

## Discussion

The Moving Defendants assert that the Complaint fails to allege facts sufficient to demonstrate that either served as Plaintiffs' "employer" as defined by the FLSA and NYLL.[2] For the reasons stated below, this Court disagrees.

### A.    Standards for Determining Employer Status

To be held liable under the FLSA, a person or entity must be an "employer," which the statute defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2018). The Supreme Court has referred to the FLSA's definition of "employer" as "expansive," *Falk v. Brennan*, 414 U.S. 190, 195 (1973), and the Second Circuit has held that "the remedial nature of the statute . . . warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." *Herman v. RSR Security Services Ltd.*, 1782 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 140 (2d Cir. 2008) ("In identifying the persons or entities who qualify as 'employers' . . . statutory definitions sweep broadly.").

In determining whether a defendant falls within this broad definition, "the overarching concern is whether the alleged employer possessed the power to control the

---

[2] As the parties acknowledge, the analysis of whether a person or entity constitutes an "employer" is the same under the FLSA and NYLL. *See Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18 Civ. 6018, 2019 WL 633355, *5 n.5 (S.D.N.Y. Feb. 14, 2019) ("Courts in this District regularly apply the same tests to determine whether entities are joint employers for purposes of the FLSA and NYLL."); *Xue Lian Lin v. Comprehensive Health Management, Inc.*, No. 08 Civ. 5619, 2009 WL 976835, *2 (S.D.N.Y. April 9, 2009) (stating that the "same analysis" applies when evaluating alleged employer-employee relationships under the FLSA and NYLL).

workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 1482 F.3d at 139; *see also Barfield*, 537 F.3d at 141 ("determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity."). While the Second Circuit has emphasized that courts evaluating the existence of an employer-employee relationship must do so "on a case-by-case basis by review of the totality of the circumstances," its decisions on this point "have identified different sets of relevant factors based on the factual challenges posed by particular cases." *Copantitla v. Fiskardo Estiatorio, Inc.*, 488 F. Supp. 253, 308 (S.D.N.Y. 2011) (quoting *Barfield*, 537 F.3d at 141-142).

To assess the "economic reality" presented by an alleged employer-employee relationship, the Second Circuit has utilized a four-factor test aptly referred to as the "economic reality" test, which asks whether an alleged employer: "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Carter*, 735 F.2d at 12; *see also Barfield*, 537 F.3d at 141-42 (applying "economic reality" test in affirming that defendant constituted plaintiffs' "employer" under the FLSA); *Herman*, 172 F.3d at 139 (applying "economic reality" test in affirming that defendant constituted plaintiff's "employer" under the FLSA). No one of these factors is dispositive in determining whether a person or entity is an employer under the FLSA. *Herman*, 1482 F.3d at 139; *see also Copantitla*, 788 F. Supp. 2d at 309 ("a court cannot use the *Carter* factors as an 'exclusive four-factor test' to determine whether

an entity is an employer under the FLSA."). Instead, these factors are meant to assist in "determining when an entity exercises sufficient formal control over a worker to be that worker's employer under the FLSA." *Copantitla*, 788 F. Supp. 2d at 309 (quoting *Barfield*, 537 F.3d at 144.). The "economic reality" test is particularly useful in cases involving claims of joint employment because "when an entity exercises those four prerogatives, that entity, in addition to any primary employer, must be considered a joint employer" under the FLSA. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 67 (2d Cir. 2003) (internal quotations and citations omitted).

In further recognition of the FLSA's breadth, the Second Circuit has found that district courts must "look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA." *Zheng*, 355 F.3d at 69. Accordingly, in *Zheng*, the court set forth an additional six-factor test to evaluate whether "an entity has functional control over workers even in the absence of the formal control measured" by the "economic reality" test. 355 F.3d at 72. Such factors include:

> (1) whether [the alleged employer's] premises and equipment were used for the plaintiffs' work; (2) whether [plaintiffs' employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominately for [the alleged employer].

*Id.* But neither factor-based examination states a "rigid rule for the identification of an FLSA employer." *Barfield*, 537 F.3d at 143. Rather, they provide "'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad

language of the FLSA." *Id.* (quoting *Zheng*, 355 F.3d at 75-76).  District courts are thus "free to consider any other factors [they] deem[] relevant to [an] assessment of the economic realities" of an alleged employer-employee relationship.  *Zheng*, 355 F.3d at 71-72.  With this guidance in mind, the Court will address whether the Moving Defendants are Plaintiffs' employers under the FLSA.

## B.   The Complaint Alleges Sufficient Facts to Demonstrate Moving Defendants' Status as Employers

When examined using the "economic reality" test, the Complaint sufficiently, though thinly, alleges that the Moving Defendants shared an employer-employee relationship with Plaintiffs.  First, Plaintiffs allege that Defendant Keaveney had the power to hire and fire workers on the job site, and, at times, instructed Defendants Andy and Carlos Morales to terminate certain workers.  (Complaint ¶¶ 68, 73.)  Although Plaintiffs do not allege that Defendant Keaveney *personally* hired or fired employees at the job site but instead instructed others to do so, "it does not matter that a defendant has delegated his powers to others.  What is critical is that the defendant has those powers to delegate." *Lopez v. Acme American Environmental Co., Inc., et al.*, No. 12 Civ. 511, 2012 WL 6062501, *6 (S.D.N.Y. Dec. 6, 2012).  Plaintiffs make precisely that allegation here.

Second, Plaintiffs allege that Defendant Keaveney supervised employee work schedules and the conditions of Plaintiffs' employment.  According to the Complaint, Defendant Keaveney was present on the job site approximately three times per week and, while there, told the workers, including the Plaintiffs, "what needed to be done or corrected" on the job site, instructed them on what tools to use to complete those tasks, and offered to provide those tools if necessary.  (Complaint ¶¶ 61-63.)  Moreover, Plaintiffs allege that Defendant Keaveney instructed representatives to have workers stay

9

late and was generally responsible for determining when they would stop working each day.  (Complaint ¶¶ 66-67.)  Indeed, the Complaint asserts that "[w]orkers were told and understood that [Defendant Keaveney] was in charge of the projects, including supervising the workers as well as the subcontractors at the worksite."  (Complaint ¶ 70.)

Allegations specific to the Moving Defendants that support the third and fourth *Carter* factors, however, are either weak or nonexistent.  Although the Complaint states that Defendant Keaveney "would deliver [Plaintiffs] paychecks to Defendants Andy and Carlos Morales for them to distribute to Plaintiffs on the job site," Plaintiffs include no details about who signed those checks, who issued those checks, or who determined Plaintiffs' hourly pay rates were determined.  (Complaint ¶ 72.)  The Second Circuit has held that the "key question" when determining whether an alleged employer determined the "rates and method of payment" is whether the employer "had the authority to sign paychecks through the relevant period."  *Herman*, 172 F.3d at 140.  Similarly, the Complaint dose not make any allegations as to Moving Defendants' maintenance of employment records.

As noted above, however, no single *Carter* factor is dispositive.  *Herman*, 1482 F.3d at 139.  With that in mind, courts have found complaints that satisfied only some of the *Carter* factors had adequately pled an employer-employee relationship under the FLSA. *See Compagnone v. MJ Licensing Co.*, No. 18 Civ. 6227, 2019 WL 1953931, *3 (S.D.N.Y. May 2, 2019) (denying motion to dismiss for failure to plead employer-employee relationship where plaintiff alleged that defendants exercised "significant control" over his work and that he had signed a written employment agreement (not attached to his complaint) because "[w]hile some of the language is 'boilerplate,' at this stage the

allegations . . . need only be plausible and the Court simply must be able to make a reasonable inference that [d]efendants were [p]laintiff's employers."); *Ramirez v. Abba Builders, Inc.*, No. 17 Civ. 8688, 2018 WL 1033233, *3 (S.D.N.Y. Feb. 21, 2018) (denying motion to dismiss where plaintiffs specifically alleged that alleged employer "instructed [p]laintiffs to perform additional overtime labor for which [p]laintiffs would ultimately be paid"); *Cruz v. Rose Associates, LLC*, No. 13 Civ. 0112, 2013 WL 1387018, *2-3 (S.D.N.Y. April 5, 2013) (denying motion to dismiss for failure to plead employer-employee relationship where plaintiffs alleged that the alleged employers collectively supervised the work completed and made wage-related decisions).

The cases cited by the Moving Defendants – many of which involved complaints that failed to plead *any* non-conclusory facts to support the alleged employer-employee relationship – do not compel a different result. *See, e.g., Lopez*, 2012 WL 6062501 at *5 (granting motion to dismiss FLSA claims against two corporate defendants where plaintiffs failed to allege that those defendants had the power to hire the plaintiffs, supervised or controlled their work schedules or payments, or maintained employment records); *Serrano*, 2015 WL 4521870 at *3 (granting motion to dismiss FLSA claims for failure to allege an employer-employee relationship where complaint contained nothing but conclusory allegations that the alleged employer "had the power to (i) fire and hire, (ii) determine the rate and method of pay and (iii) otherwise affect the quality of employment"); *Diaz v. Consortium for Worker Education, Inc.*, No. 10 Civ. 01848, 2010 WL 3910280, *4 (S.D.N.Y. Sept. 28, 2010) (granting motion to dismiss FLSA claims for failure to allege an employer-employee relationship where the complaint alleged that employer kept a "global view" of plaintiffs' work, but "contain[ed] no facts that indicate[d]

11

that [employer] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their work hours, or maintaining employment records").

In a misguided effort to liken the instant case to that precedent, the Moving Defendants belittle the significance of the allegations that specifically concern them by prefacing their description of such allegations with the word "merely." (*See* Motion at 10 ("Plaintiffs merely allege that Defendant Keaveney was on site up to three times per week, that he made comments about things that needed to be fixed at the worksite, and that he delivered money to Carlos and Andy Morales . . . to be distributed to Plaintiffs.").) But in recounting Plaintiffs' allegations, the Moving Defendants fail to acknowledge those asserting that Defendant Keaveney had the power to determine when Plaintiffs left the job site (and, at times, called for Plaintiffs to work late) and to fire workers, and that Plaintiffs were told and understood that Defendant Keaveney was "in charge" of the projects at issue.[3]  Taken together, and taken as true, these allegations are sufficient to

---

[3] Moving Defendants appear to ignore these allegations because they do not specifically reference Plaintiffs, only "employees" or "workers" on the job site at issue. *See* Motion at 10 ("Plaintiffs allege that Defendants exercised some sort of control, but do not allege that Defendants exercised it over them specifically.  Plaintiffs allege that Defendants had some relation to 'workers' or to 'employees' but, critically provide scant allegations about the control Defendants had over Plaintiffs themselves.").  But this Court is required to "draw all reasonable inferences in [plaintiff's] favor." *Compagnone*, 2018 WL 1953931 at *2; *see also Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18 Civ. 6018, 2019 WL 633355, *4 (S.D.N.Y. Feb. 14, 2019) ("When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, 'drawing all reasonable inferences in favor of the plaintiff.'") (quoting *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  For purposes of resolving the instant motion to dismiss, the Court finds that it is reasonable to infer, that as Plaintiffs were "workers" or "employees" on the job site at issue, references to the "workers" or "employees" included Plaintiffs.  *See* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss (Dkt. 60) at 7 ("[A]s the term 'workers' in the Complaint refers to those who performed work at the 74th Street Site, that term must necessarily and undoubtedly include Plaintiffs, as Plaintiffs have performed work at the 74th Street Site.")

allege an employer-employee relationship under the FLSA and allow Plaintiffs' claims against the Moving Defendants to survive dismissal.

The Moving Defendants may ultimately prove on summary judgment or at trial that they did not (or could not) act in the ways that Plaintiffs claim they did, or that inferences reasonably drawn in Plaintiffs' favor (as they must on this motion) are incorrect. But the Complaint's allegations that the Moving Defendants shared an employer-employee relationship with Plaintiffs cross the line from implausible to plausible and are accordingly entitled to survive dismissal.

## Conclusion

For the foregoing reasons, I recommend that Moving Defendants' Motion to Dismiss be DENIED. The parties' remaining arguments, to the extent not addressed herein, have been considered by the Court and found to be without merit. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Valerie E. Caproni, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      January 13, 2020
            New York, New York